UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br><br>v. )<br><br>MIKAELA SANFORD, )<br><br>Defendant ) | Criminal No. 19-10081-IT<br><br>**REDACTED**<br>**(Leave to File Granted May 11, 2022)** |

### GOVERNMENT'S SENTENCING MEMORANDUM ███

The government respectfully submits this sentencing memorandum ████████ ████████████████████████████████████████████████████████ in connection with the sentencing of defendant Mikaela Sanford.

Beginning in 2013, Sanford worked as an assistant and project manager for William "Rick" Singer. Within months of joining Singer's company, Sanford began taking high school and college courses in place of Singer's students. Over the course of her six years working for Singer, she took courses, or hired others to take courses, for at least eleven of Singer's students, for which Singer paid her more than $67,000. During that time, Sanford also played a role in additional aspects of Singer's scheme. She added fake athletic activities, awards, and demographic information to students' college applications. She completed paperwork to move students' testing locations to one of two testing centers Singer "controlled." Singer copied Sanford on emails discussing the "side door" and payments to coaches and administrators, and she registered students admitted as athletic recruits with the NCAA, despite knowing that they would not play a sport in college.

At the same time, Sanford did not have full visibility into Singer's scheme.  Everything she did was at Singer's direction.  Sanford also accepted responsibility for her conduct by pleading guilty to Count One of the Superseding Indictment in October 2020 ████████████████████ ████████████████████████████████████████████████ ███████████████████████  Taking these factors into account, along with the sentences imposed on related defendants, the government recommends that Sanford be sentenced to time served (one day) followed by one year of supervised release, 100 hours of community service, and a forfeiture money judgment of $67,062.50, which represents the criminal proceeds that she personally received.

## I.   Overview of the Offense Conduct

Sanford began working for Singer's for-profit company The Key in or about March 2013.  By that summer, she was taking classes for Singer's students.  Singer paid her $1,250 per high school course and $2,500 per college course.  The grades Sanford obtained were used to increase students' grade point averages to make them more competitive for college admission, to facilitate their transfer to a different college, or to allow them to graduate high school or college.  In her six years working for Singer, Sanford took classes for, or hired other people to take classes for, eleven of Singer's students, earning approximately $67,062.50 for herself.

Sanford also played a role in the athletic recruitment aspect of Singer's scheme.  While she did not have full visibility into the scheme, Sanford understood the basic mechanics of it because Singer copied her on emails discussing the "side door," payments in exchange for recruiting students, and fake athletic profiles.  For example, within about a year of Sanford joining the Key, Singer included her on an email to a parent in which he explained that a "guaranteed placement" at a school would cost "between 300 – 1-5 million for Ivies and Stanford normally ten times that."

In or about 2015, Singer copied Sanford on an email to Ali Khosroshahin, the former head women's soccer coach at the University of Southern California ("USC"), in which Singer offered Khosroshahin $100,000 to the school or Khosroshahin's soccer program in exchange for getting the daughter of related defendant, Robert Zangrillo, into USC. In 2016 and 2017, Singer copied Sanford on emails with former USC women's soccer coach Laura Janke, where it was evident the athletic profiles Janke was creating were fabricated. For example, Singer asked Janke to use "any picture showing a Chinese girl skippering" on the sailing profile for a Chinese student applying to Stanford. In subsequent emails about the same student, Singer, still copying Sanford, discussed that the student's admission hinged on her getting a spot on the sailing team and the corresponding payment to Stanford Sailing. With these emails giving her a view into the scheme, Sanford, at Singer's direction, added athletic activities to certain college applications (*i.e.*, USC) for a student, but removed those athletic activities for other schools to which the student applied. She also registered Singer's students for the NCAA clearinghouse, a requirement for student-athletes, even though she knew they would not be playing a sport in college.

In addition to fake athletics, Sanford added fake awards to students' college applications. Sanford, at Singer's direction, also changed students' race or ethnicity on applications and/or falsely indicated students were first-generation college students. The purpose of these changes was to make the students appear more attractive to colleges. Sanford also played a role in changing students' college entrance exam test centers from the students' high school to either the West Hollywood or Houston test centers that Singer "controlled." While Sanford knew that Singer wanted students to take their exams at one of these centers, she did not have visibility into the cheating occurring at the centers.

## II.     The Applicable Sentencing Guidelines

The parties have stipulated in the plea agreement that Sanford's total offense level under the Sentencing Guidelines is 14.  That calculation reflects a base offense level of 19 under Section 2E1.1(a)(1); a 2-level reduction under Section 3B1.2 because Sanford was a minor participant in the scheme; and a 3-level decrease pursuant to Section 3E1.1 for acceptance of responsibility.  The resulting Guidelines sentencing range is between 15 and 21 months.

Probation has taken the position that Sanford is not entitled to a minor participant reduction. The government respectfully disagrees with Probation's assessment.  Sanford performed a limited function in the scheme—mainly class taking.  Her personal gain from the scheme was substantially lower than her co-conspirators.  Most notably, Sanford had limited knowledge of the scope of the scheme.  For these reasons, and consistent with its position in the plea agreement, the government maintains that a minor participant reduction is appropriate for Sanford.

## III.    Sentencing Recommendation ███████████████████████████

The government submits that, under either the parties' or Probation's calculation of the Sentencing  Guidelines,  ██████████████████████████████████████████ ████████████████████████████████████████████████████████████ and a downward variance is appropriate to avoid unwarranted sentencing disparities.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

4

███████████████████████████████████████████████████

███████████████████████████████████████████

Separately, the government is mindful of the sentences imposed on related defendants. Sentences in this and related cases have ranged from probation (Niki Williams and Peter Jan Sartorio, each of whom pleaded guilty early on for their respective roles in the test cheating scheme) to 15 months in prison (John Wilson, who was convicted at trial for pursuing the athletic recruitment scheme for all three of his children and cheating on his taxes). As noted in the Government's Supplemental Sentencing Memorandum (Dkt. 1292) filed in connection with the sentencing of co-defendant Steven Masera, the government views "facilitators" of Singer's scheme, such as Sanford and Masera, as less culpable than (1) the parents who paid exorbitant sums to secure their children's admission to college as purported athletic recruits and/or to obtain inflated test scores for their children through cheating, and (2) the coaches and athletic department administrators who accepted bribes in exchange for falsely designating the children of Singer's clients as athletic recruits.

Among the facilitators, Sanford is among the least culpable, save for Masera (for whom the government likewise recommended time served) and Williams (who received probation). Masera worked as Singer's bookkeeper and facilitated nearly all of the financial transactions involved in the scheme. Williams allowed Mark Riddell to purport to proctor students' college entrance exams, while helping students cheat, in violation of her fiduciary duties to the College Board and ACT, Inc. Like Masera and Williams, Sanford did not have full visibility into Singer's scheme. As was the case with Masera, everything Sanford did was at Singer's direction. However, Sanford benefited more personally from the scheme than Masera, who earned nothing outside his regular salary for his role in facilitating money laundering, and Williams, who earned

approximately $20,000 in bribe payments. ████████████████████████████

████████████████████████████████████████████████████

Of the two other facilitators to have been sentenced as of the filing of this memorandum (Mark Riddell and Martin Fox), the government views Sanford as substantially less culpable. Riddell secured inflated test scores for 24 students on 27 exams, receiving $5,000 to $10,000 per exam, for a total of just under $240,000 over the eight years he was involved in the scheme. At Riddell's sentencing, Judge Gorton stated that he would have sentenced Riddell to more than a year in prison, but credited his early and extensive cooperation ████████████████

████████████████████████████████████████████████████

████████████████ and sentenced Riddell to four months in prison. Fox facilitated both the test-cheating and side-door aspects of the scheme by serving as a middleman between Singer and Williams and between Singer and college coaches. Fox earned approximately $245,000 from the scheme, but also facilitated bribe payments totaling thousands of dollars more. This Court sentenced Fox to three months' incarceration plus three months of home confinement, accounting for ████████████████ and his significant health issues. Both Riddell and Fox had greater visibility into Singer's scheme and profited substantially more than Sanford. Their conduct was more serious than Sanford's and they were critical to the success of Singer's scheme. ████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████

The government's recommendation of time served and one year of supervised release, to include a special condition of 100 hours of community service, balances the nature and seriousness

of Sanford's offense against her somewhat limited role in the scheme, ███████ and sentences imposed on similarly situated defendants in the college admissions cases.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court sentence the defendant to a term of imprisonment of time served (one day), followed by one year of supervised release with 100 hours of community service, a forfeiture money judgment of $67,062.50, and a $100 special assessment.

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By:    */s/ Kristen A. Kearney*
KRISTEN A. KEARNEY
LESLIE A. WRIGHT
IAN J. STEARNS
STEPHEN E. FRANK
Assistant United States Attorneys

Date: May 12, 2022

## CERTIFICATE OF SERVICE

I hereby certify that this redacted document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

By:    */s/ Kristen A. Kearney*
KRISTEN A. KEARNEY
Assistant United States Attorney